THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| CAROLINA POWER & LIGHT COMPANY<br>d/b/a PROGRESS ENERGY CAROLINAS,<br>INC., | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Civil Action No.: 5:08-CV-460-FL<br>(CONSOLIDATED) |
| 3M COMPANY, et al., | )<br>) | |
| Defendants. | ) | |
| | | |
| CONSOLIDATION COAL COMPANY, | )<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Civil Action No.: 5:08-CV-463-FL<br>(CONSOLIDATED) |
| 3M COMPANY, et al., | )<br>) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court on the motion to strike and motion for sanctions of Defendant T&R Electric Supply Company ("T&R") [CP&L DE-435; Consol DE-434],[1] which Chief Judge Flanagan has referred to the undersigned for decision. Carolina Power & Light Co. d/b/a Progress Energy Carolinas, Inc. ("CP&L"), Consolidation Coal Company ("Consol"), and PCS Phosphate Company, Inc. ("PCS") (collectively, "Plaintiffs") filed a response in opposition

---

[1] Hereafter, unless otherwise noted, the Court will cite only to the docket number in the CP&L case, No. 5:08-CV-460-FL.

[DE-451], to which T&R filed a reply [DE-467] and Plaintiffs filed a surreply [DE-479]. Accordingly, the matter has been fully briefed and is ripe for decision.

## STATEMENT OF THE CASE

On September 1, 2009, CP&L and Consol filed their consolidated amended complaints in each lead case against all Defendants. On September 15, 2009, PCS counterclaimed against CP&L and Consol and cross-claimed against the other Defendants. On October 13, 2009, Defendants filed an omnibus motion to dismiss the amended complaints and cross-claims under Rule 12(b)(6). In addition, individual Defendants filed supplemental motions to dismiss on alternative grounds. On March 24, 2010, Chief Judge Flanagan denied the omnibus motion to dismiss all claims. [DE-277.]

On June 15, 2010, the Court entered a Case Management Order ("CMO"), which provided in part that Defendants would file by July 30, 2010 a collective pleading of Standard Defenses and Claims to include all available statutory or common law CERCLA defenses and compulsory counterclaims as required by the Federal Rules of Civil Procedure and that each Defendant would file as necessary an individual answer asserting any non-CERCLA defenses or common law claims and counterclaims specific to that particular Defendant. CMO § II.D & E [DE-312]. On July 23, 2010, CP&L filed its third amended complaint. [DE-325.] On August 30, 2010, T&R filed its individual answer to Plaintiffs' respective amended complaints and cross-claims. [DE-435.] Within its answer, T&R incorporated the instant motion to strike and motion for sanctions, supplemented by a memorandum in support [DE-463], which alleged that Plaintiffs violated Rule 11 by knowingly making false factual allegations against T&R in their respective pleadings, by asserting legal contentions not warranted by existing law, and by pursuing this action for an improper purpose. T&R's Ans. at 5 [DE-435].

## DISCUSSION

### I. Motion For Sanctions

#### a. Standard of Review

"Rule 11 requires an attorney to make a reasonable inquiry to determine that a complaint is well grounded in both fact and law, and not filed for an improper purpose." *Myers v. Sessoms & Rogers, P.A.*, No. 5:10-cv-166-D, 2011 WL 683914, at *2 (E.D.N.C. Feb. 17, 2011) (citing Fed. R. Civ. P. 11(b)). "An objective test is used to determine the reasonableness of a lawyer's prefiling investigation." *In re Kunstler*, 914 F.2d 505, 514 (4th Cir. 1990). "Factual allegations fail to satisfy Rule 11(b)(3) when they are 'unsupported by *any* information obtained prior to filing.'" *Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 277 (4th Cir.2006) (quoting *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991)). A legal argument must have "absolutely no chance of success under the existing precedent" to violate Rule 11(b)(2). *Id.* (quoting *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002)). Sanctions are justified only when "applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Id.* Finally, Rule 11 defines "improper purpose" to include harassment, causing unnecessary delay, or needlessly increasing litigation costs. Fed. R. Civ. P. 11(b)(1). "However, if a complaint is filed to vindicate rights in court, and also for some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate a proper purpose." *Kunstler*, 914 F.2d at 518. A court must apply an objective standard, rather than focusing on the consequences as subjectively viewed by opposing counsel, when evaluating improper purpose. *Id.* 518-19.

3

### b. Analysis

#### i. Factual Contentions

T&R first contends that certain allegations made against it had no reasonable factual basis and were made with deliberate indifference to the truth. The disputed allegations are that T&R (1) was "not in the business of manufacturing transformers and/or in business of selling transformers to end users[,]" Consol's Second Am. Compl. ¶ 154 [Consol DE-135]; (2) sold transformers as scrap and/or "as is" with no warranties, *id*. ¶ 156; (3) "'sold' transformers to Ward with the intent to dispose of such transformers and/or the PCBs contained therein or some portion thereof[,]" *id*. ¶ 182; (4) "arranged to send [its] used, surplus, damaged, and/or inoperable transformers" to Ward, CP&L's Third Am. Comp. ¶ 24 [CP&L DE-325]; and (5) "sold one or more transformers to Ward with the intent to dispose of some or all of those transformers and/or the PCB's contained therein or some portion thereof [,]" *id*. ¶ 62. T&R further contends that, prior to the filing of this action, Plaintiffs knew that (1) T&R sold transformers to end users and to used electrical equipment sales/service shops like Ward; (2) that T&R never sold transformers "as is" or "for scrap;" (3) that T&R sold only working equipment under warranty at market prices that was guaranteed to be operable for 18 months after purchase; (4) that every transformer that leaves T&R is intact and non-leaking; (5) that T&R has never sold a transformer for the purposes of disposal of either the transformer or its contents; and (6) that all transformers sold to Ward were for re-sale and re-use.

In support of these contentions, T&R has presented (1) a letter from Bob Ward stating that "all equipment, including electrical transformers that Ward Transformer Sales & Service purchased from T&R Electric Supply Co., Inc were purchased as rebuilt or reconditioned products for resale and reuse and were accompanied by warranties from T&R insuring that the

4

equipment was in working condition at the time of the sale and guaranteed for 18 months after the time of purchase." T&R's Memo., Ex. A-3 [CP&L DE-436-3]; (2) two affidavits of Ken Ross, Vice President and co-founder of T&R, in which he states, among other things, that T&R never sold transformers for purposes of disposal and that every transformer sold by T&R is sold for resale and reuse and comes with an 18 month guaranty, *id*. Ex. A-5 & Ex. A-7; and (3) an affidavit from a chemist employed by T&R Service Company, a provider of PCB testing for many companies and utilities, as to the testing of T&R transformers prior to their purchase by Ward, *id*. Ex. A-7.

Plaintiffs contend that T&R has failed to comply with the procedural requirements of Rule 11 and that the allegations as related to T&R are, at a minimum, disputed. Plaintiffs additionally contend that their investigation, Ward's customer records, and other records provided by some Defendants do not support the information provided by T&R. For example, Plaintiffs point to a T&R document that shows a transformer sold to Ward contained 137 ppm PCBs, and not certified non-PCB oil as alleged by T&R, so that PCB contaminated oil had to be removed and replaced by Ward. Pls.' Resp., Ex. 8-10 [CP&L DE-451]. Further, Plaintiffs point to Ward documents that indicate transformers purchased from T&R were leaking on arrival at Ward. *Id*. Ex.12-13. The Court agrees with Plaintiffs that the disputed allegations as related to T&R have sufficient support to withstand a Rule 11 challenge. Based, in part, on correspondence between counsel for Consol and counsel for T&R, the Court finds that Plaintiffs considered T&R's contentions, but found ample conflicting evidence in the Ward records and other documents to justify the allegations at the pleading stage. While ultimately T&R may disprove some or all of these allegations, the inquiry under Rule 11 is whether the allegations are

5

unsupported by *any* information obtained prior to filing and the Court cannot make such a finding with respect to the factual allegations made against T&R.

### ii. Legal Contentions

T&R next contends that Plaintiffs knew that their legal claims against T&R were not well grounded in law because T&R successfully defended similar claims in an earlier case, *United States v. B&D Electric*, No. 1:05CV63 CDP, 2007 WL 1395468 (E.D. Mo. May 9, 2007), and because the Supreme Court's decision in *Burlington Northern & Sante Fe Railway Co. v. United States*, 129 S. Ct. 1870 (2009) so restricted imposition of "arranger" liability to a party such as T&R that Plaintiffs had no chance of success under existing precedent. Plaintiffs counter that the Court denied the omnibus motion to dismiss based on Defendants' interpretation of *Burlington Northern* and that the proof in this case is greater than what was present in *B&D Electric*. The Court agrees with Plaintiffs that the issues raised by T&R are more appropriately decided on summary judgment after the factual record has been fully developed. The Court cannot at this time find that Plaintiffs have absolutely no chance of success under the existing precedent of *Burlington Northern* or in light of the *B&D Electric* case.

### iii. Purpose of Filing

Finally, T&R contends that Plaintiffs filed this suit solely for the purpose of increasing T&R's litigation costs in an attempt to extract an unreasonable settlement payment. T&R has presented no direct evidence in support of this contention. Therefore, having found that Plaintiffs' prefiling investigation was reasonable and that its legal contentions were not devoid of merit, the Court cannot conclude that Plaintiffs filed this action against T&R for an improper purpose.

Accordingly, T&R's motion for sanctions is denied.

## II.    Motion to Strike

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Motions to strike are generally disfavored "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citation omitted).  "Therefore, '[m]otions to strike are rather strictly considered and have often been denied even when literally within the provisions of Rule 12(f) where there is no showing of prejudicial harm to the moving party.'" *Culver v. JBC Legal Group, P.C.*, No. 5:04-cv-389-FL, 2005 WL 5621875, at *3 (E.D.N.C. June 28, 2005) (quoting *Tivoli Reality Inc. v. Paramount Pictures, Inc.*, 80 F. Supp. 800, 803 (D. Del. 1948)).  T&R presented no separate basis, apart from its arguments with respect to Rule 11, upon which to strike the disputed allegations.  Having found that Plaintiffs allegations and claims are sufficient to withstand a challenge under Rule 11, the Court finds no basis to strike the disputed allegations against T&R from the pleadings.  Accordingly, T&R's motion to strike is denied.

## III.    Conclusion

It is hereby, **ORDERED** that T&R's the motion to strike and motion for sanctions

7

[CP&L DE-435; Consol DE-434] are **DENIED**.

This the 23rd day of March, 2011.

_____
DAVID W. DANIEL
United States Magistrate Judge