IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| CAROLINA POWER & LIGHT COMPANY d/b/a PROGRESS ENERGY CAROLINAS, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 5:08-CV-460-FL |
| ALCAN ALUMINUM CORPORATION, et al., | ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| CONSOLIDATION COAL COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | NO. 5:08-CV-463-FL |
| v. | ) ) | |
| ALCAN ALUMINUM CORPORATION, et al., | ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

This matter comes before the court on several motions to dismiss (DE ## 946, 953, 955, 957, 963, 1121, 1123, 1125, 1127, 1129, and 1131)[1] by third-party defendants to three third-party complaints filed by PCS Phosphate Company, Inc. ("PCS Phosphate") on November 21, 2011. The

---

[1] Note that for the convenience of the court, all docket entry numbers in this order are based upon their location in the CP&L docket, 5:08-cv-460.

issues raised are ripe for adjudication. For reasons set forth below, third-party defendants' motions to dismiss are DENIED.

## STATEMENT OF THE CASE

The court's orders dated March 24, 2010, March 30, 2012, January 31, 2013, and February 19, 2013, contained a detailed statement of the case, which section the court incorporates here. For ease of reference, the court repeats and updates some of that summary below, pertinent to the instant motions.

Carolina Power and Light Company d/b/a Progress Energy Carolinas, Inc. ("CP&L") and Consolidation Coal Company ("Consol") (collectively "plaintiffs") entered into an administrative settlement with the United States Environmental Protection Agency ("EPA") in 2005, which obligates them to perform removal actions at the Ward Transformer Superfund Site ("Ward Site") and to reimburse the EPA for its own removal costs related to the site, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675. Cross-claimant PCS Phosphate, though not a party to the administrative settlement, entered into a trust agreement with plaintiffs and has contributed to funding the removal action.

On September 1, 2009, plaintiffs filed consolidated amended complaints against defendants.[2]

---

[2] Originally, six separate lawsuits were filed by plaintiffs CP&L and Consol between September 12, 2008, and April 30, 2009. They were consolidated into the two lead cases noted above at a joint scheduling conference, on August 18, 2009. On September 1, 2009, CP&L's consolidated and second amended complaint and Consol's second amended complaint, each alleged liability against approximately one hundred and forty-four (144) defendants. Thereafter, the court issued a preliminary case management order, setting forth the phases of discovery (Phase I: Liability and Phase II: Allocation of Costs) and ordering a future discovery status conference. As Phase 1 discovery progressed, on July 23, 2010, plaintiff CP&L filed a consolidated and third amended complaint. For clarification, as defendants continued to be voluntarily dismissed and some were dismissed by order (DE # 277), plaintiffs filed a list of defendants remaining in the case by transaction on November 18, 2011, indicating that one hundred and twelve (112) defendants remained at that time (DE# 630). More defendants have since settled.

2

Plaintiffs sought contribution toward the costs of removal actions at the Ward Site, pursuant to §§ 107(a) and 113(f) of CERCLA. On September 15, 2009, defendant PCS Phosphate counterclaimed against plaintiffs and cross-claimed against other defendants then named in the complaints, seeking cost recovery based on their contribution to the removal action, pursuant to § 107(a) of CERCLA. See 42 U.S.C. § 9607(a).

Plaintiffs and PCS Phosphate (collectively "claimants") allege that defendants sent electrical transformers to the Ward Site. These transformers allegedly contained dielectric fluids that were used as an insulating and cooling medium. In turn, the dielectric fluid allegedly contained polychlorinated biphenyls ("PCBs"). Claimants identify three groups of defendants: (1) those who sent transformers to the Ward Site for repairs and for the purpose of disposing of PCBs contained therein or some part thereof; (2) those who sent transformers to the Ward Site on consignment and for the purpose of disposing of the transformers and/or PCBs contained therein or some portion thereof; and (3) those who sold transformers to Ward with the intent to dispose of such transformers and/or the PCBs contained therein or some portion thereof. Claimants maintain that the repair and consignment defendants are liable under CERCLA §§ 107(a)(2) and (3), while the sale defendants are liable only under § 107(a)(3).[3]

On October 13, 2009, defendants moved to dismiss the amended complaints and cross-claims. Defendants filed a single omnibus motion pursuant to Rule 12(b)(6) for failure to state a claim for relief, which motion was supplemented by individual defendants or groups of defendants

---

[3] Section 107(a)(2) makes liable "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). Section 107(a)(3) makes liable "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." 42 U.S.C. § 9607(a)(3).

3

filing additional motions to dismiss on alternative grounds. By order entered March 24, 2010, the court denied defendants' omnibus motion to dismiss. Claimants were allowed to proceed on their past owner liability claims under § 107(a)(2) and arranger liability claims under § 107(a)(3). However, the court granted certain defendants' motion to dismiss plaintiffs' § 107(a) cost recovery claims, finding that response costs incurred pursuant to an administrative settlement with the United States are recoverable only under § 113(f). The parties stipulated, in consent order dated September 8, 2010, that plaintiffs' § 107(a) cost recovery claims as to the remaining defendants were also dismissed and their claims could only continue under § 113(f). Cross-claimant PCS Phosphate's § 107(a) cost recovery claims were unaffected by either order. Subsequently, the court ruled on several motions to dismiss particular to individual defendants.[4]

On November 21, 2011, PCS Phosphate filed three third-party complaints (DE ## 633, 634, 635), naming forty (40) third-party defendants who had not been previously sued by plaintiffs (Consol and CP&L). Third-party defendants answered (many after receiving an extension of time), one settled,[5] one was subject to default,[6] and most joined in an omnibus motion on May 30, 2012, to dismiss all three of PCS Phosphate's complaints for failure to state a claim pursuant to Rule 12(b)(6) because it filed suit for recovery under CERCLA § 107(a) instead of § 113(f) (which defendants argue would have been correct) or, in the alternative, because PCS filed suit for an

---

[4] During a status conference with parties' counsel on October 5, 2011, the parties suggested using a test case method to help expedite the discovery process. The court stayed discovery for all other defendants pending the resolution of the test case defendants' motions. One test case defendant settled and the motions related to the other two test case defendants were decided in orders entered on January 31, 2013, and February 19, 2013, respectively.

[5] Kerr-McGee Corporation was dismissed by stipulation on January 10, 2012.

[6] Davis. Jerry Inc. had default entered against it on January 26, 2012.

4

improper claim pursuant to Rule 14.[7] The omnibus motion adopted the arguments of third-party defendant Riley Power, Inc.'s ("Riley Power") February 2, 2012, motion to dismiss PCS Phosphate's third-party complaint in which Riley Power was named, which provides some further elaboration on those grounds as well as Rule 12(b)(6) arguments specific to Riley Power.

Several other defendants adopted the Riley Power brief without providing further elaboration.[8] Mass. Electric Construction Co. ("MEC") adopted the Riley Power brief, but also put forth additional argument in its motion. Truland Corporation ("Truland"), a signatory on the omnibus motion, adopted the Riley Power brief, put forth additional argument, and filed a second motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(4). Finally, several defendants filed a supplemental motion to dismiss two of the third-party complaints on May 31, 2012, arguing that Rule 14(a) mandates dismissal of PCS Phosphate's § 107(a) claim because it is not derivative of plaintiffs' § 113(f) claims.[9]

PCS Phosphate responded to these various motions to dismiss via four briefs on July 2, 2012, and most third-party defendants replied via five filings on July 19, 2012. On August 3, 2012, PCS

---

[7] Note that one defendant (IES Commercial, Inc.) that joined in the omnibus motion was not named in PCS Phosphate's third-party complaints on the CP&L docket, but only on the Consol docket. IES Commercial had obtained dismissal pursuant to order on March 24, 2010. The court's order was reconsidered by motion of PCS Phosphate and CP&L for failure to allow those parties to amend their pleadings as to IES Commercial's successor liability. The court allowed such filing of amended pleadings by order on July 19, 2010. Thereafter, CP&L filed its Consolidated and Third Amended Complaint on July 23, 2010, and PCS Phosphate filed its Counterclaim to Amended Complaint and Amended Crossclaims on July 26, 2010. Both filings named IES Commercial, bringing it back into the case as a defendant on the CP&L docket. However, Consol did not amend its pleadings, leaving PCS Phosphate to name IES Commercial as a third-party defendant on the Consol docket only.

[8] These defendants were City of Winston-Salem, North Carolina, Fabri-Kal Corporation, Gencorp, Inc., Villanova University in the State of Pennsylvania (also a signatory to the omnibus motion), and Trinity Industries, Inc. (which also filed a reply adopting the omnibus reply brief).

[9] This motion was filed by third-party defendants Babson College, Batesville Casket Company, Magnetic Metals Corporation, The North Carolina Granite Corporation, Ohio Valley Medical Center, Inc., Truland, The Rouse Company, LLC and UPS Ground Freight, Inc.

5

Phosphate moved for leave to file surreply to the omnibus motion, which this court granted on March 11, 2013. Therefore, currently before the court are eleven (11) related motions to dismiss.

## STATEMENT OF THE FACTS[10]

A.  Ward Site & Removal Action

Since 2004, the Ward Site, which comprises a number of acres near Mt. Herman Road and the Raleigh-Durham International Airport in Wake County, North Carolina, has been subject to a time-critical removal action, as determined by the EPA, for environmental contamination caused by polychlorinated biphenyls ("PCBs"). Third-Party Compl.[11] ¶ 10. The Site includes a former transformer repair, sales, and reconditioning facility ("the Ward Facility") on eleven (11) acres of land, as well as other adjacent parcels of land.[12] Id. at ¶ 5. The PCB contamination may be traced back directly to the Ward Facility, where Ward Transformer Company, Inc. and its successor in business operations Ward Transformer and Sales, Inc. (collectively "Ward") worked on and stored transformers contaminated with PCBs. Id. at ¶ 9.

On September 16, 2005, plaintiffs entered into an Administrative Settlement Agreement and Order on Consent for Removal Action ("AOC") with the EPA for the Ward Site. Id. at ¶ 11. PCS Phosphate was not a signatory to the AOC. Id. Also in 2005, plaintiffs approached defendants to the litigation to invite them to participate in conducting and funding the removal action at the Ward

---

[10] According to the pleading standard described infra Discussion Part A, the court accepts as true the facts asserted in the third-party complaints and construes them in the light most favorable to PCS Phosphate.

[11] As to general background on the Ward Site, all three of PCS Phosphate's third-party complaints are identical.

[12] "The function and purpose of a transformer is to change an electrical current, typically by lowering or 'stepping down' the voltage. Transformers are composed of 'coils' or 'windings' made of copper or aluminum wire wrapped around an iron core. The core and coil are housed inside a steel tank and submerged under a dielectric fluid ('oil') to cool, insulate, and protect the electrical components. . . . Transformers also often have radiators or bushings attached to the outside of the tank." Third-Party Compl. ¶ 2 (incorporating by reference CP&L Amend. Compl. ¶ 7).

6

Site. Id. at ¶ 12. PCS Phosphate was the only defendant who agreed to help plaintiffs with the removal action. Id. In March 2007, PCS Phosphate entered into the First Amended Ward Transformer Site Trust Agreement ("Trust Agreement") with plaintiffs, Ward, and Bassett Furniture Industries, Inc., creating the Ward Transformer Site Trust Fund for the removal action at the Ward Site. Id. at ¶ 13. PCS Phosphate is, therefore, in a unique position as the only defendant who has contributed to funding the removal action, and a non-party to the AOC. Id. at ¶¶ 14-15. Although PCS Phosphate is liable only for its proportionate share of the total response costs, it has contributed $17.4 million to fund the removal action, and will continue to contribute funds. Id. at ¶¶ 16-17.

B.  Third-Party Defendants[13]

Riley Power is a Massachusetts corporation with its principal place of business in that state. Additional Third-Party Compl. ¶ 22. Riley Power has gone through several name changes. Id. During the relevant time, it was known as Riley Stoker Corporation ("Riley Stoker"). Id. Riley Power is responsible for the liabilities of Riley Stoker. Id. Riley Stoker consigned to Ward at least eight transformers containing PCBs, and Ward scrapped those transformers. Id. With regard to at least seven of these transformers, Ward requested that Riley Stoker remove them from Ward's facility or transfer ownership to Ward for disposal, prior to scrapping them. Id.

MEC is a Delaware corporation with its principal place of business in Boston, Massachusetts. Third-Party Compl. ¶ 32. MEC sold at least one oil-filled transformer containing PCBs to Ward. Id. Ward reconditioned the transformer, which included filling it with new oil. Id.

---

[13] Note that because not all third-party defendants challenge the sufficiency of the pleadings as to themselves specifically, but only as to PCS Phosphate's ability to raise a claim in general, the court does not endeavor to reiterate each allegation against each defendant. Only the defendants who challenged the specific factual allegations against them in the complaint as being insufficient by filing individual supplemental motions to dismiss are described in this section, in order to provide a basis for analysis below.

7

Truland is a Virginia corporation with its principal place of business in that state. Id. at ¶ 48. Truland sent at least one transformer containing PCBs to Ward for repair in 1982. Id. The bottom was rusting out of this transformer. Id.

In its third-party complaint, PCS Phosphate notes that the factual allegations against individual third-party defendants are "based upon" Ward records, and that each third-party defendant "will receive the nexus documents regarding its transactions with Ward." Third-Party Compl. 6 n.4.

## DISCUSSION

A.   Standard of Review

Defendants challenge the pleadings under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In evaluating their motion, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the [claimant] in weighing the legal sufficiency of the [pleadings]." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)). To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard is met where "the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 255 (quoting Iqbal, 556 U.S. at 678).

"Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow

8

a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 556 U.S. at 679). In evaluating the factual content necessary to survive a motion to dismiss, however, the court does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citing Iqbal, 556 U.S. at 678; Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009)) (internal quotation marks omitted).

"At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679). If the properly considered factual allegations, viewed in context, fail to "nudge[] . . . claims across the line from conceivable to plausible, the[] complaint must be dismissed." Twombly, 550 U.S. at 570. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of [that] line." Iqbal, 556 U.S. at 678 (internal quotation marks omitted).

B. Analysis

PCS Phosphate brings its causes of action pursuant to CERLCA, 42 U.S.C. §§ 9601-9675, enacted in 1980 "in response to the serious environmental and health risks posed by industrial pollution." Burlington N. & Sante Fe Ry. Co. v. United States, 556 U.S. 599, 602 (2009) (citing United States v. Bestfoods, 524 U.S. 51, 55 (1998)). A remedial statute, CERCLA "promote[s] the timely cleanup of hazardous waste sites and . . . ensure[s] that the costs of such cleanup efforts [are] borne by those responsible for the contamination." Id. (internal quotation marks omitted). The statute "permits the United States and private parties to recover the costs of cleaning up hazardous

wastes from . . . [t]hose who fall within one of [four] categories described by the statute[,] known as [PRPs], [who] are strictly liable for cleanup costs subject only to the statute's limited defenses." Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc., 191 F.3d 409, 413 (4th Cir. 1999); see also 42 U.S.C. § 9607(a)(1)-(4) (enumerating four categories of PRPs); Burlington N., 556 U.S. at 608 ("CERCLA imposes strict liability for environmental contamination upon four broad classes of PRPs.").

1.     Motions to Dismiss § 107(a) Claims

PCS Phosphate brings its actions solely under CERCLA § 107(a), to recover costs of cleanup. See 42 U.S.C. § 9607(a).[14] Third-party defendants who signed or adopted the omnibus motion move for dismissal of PCS Phosphate's § 107(a) actions for failure to state a claim for which relief can be granted, arguing that § 113(f) provides that the sole remedy for PCS Phospate because of its trust agreement with plaintiffs. See 42 U.S.C. § 9613(f).[15] PCS Phosphate contends that § 113(f) is only available for contribution once a party has settled its liability with the government. To this, certain third-party defendants respond that PCS Phosphate's trust agreement with parties who did settle with the federal government through the AOC, effectively obligates PCS Phosphate to comply with the AOC.

In 2004, the Supreme Court held that a § 113(f) action is only available during or following

---

[14] This provision provides in pertinent part that: "[All PRPs] shall be liable for . . . all costs of removal or remedial action incurred by the [government, and] . . . necessary costs of response incurred by any other person." 42 U.S.C. § 9607(a).

[15] This provision provides in pertinent part that: "A person who has resolved its liability to the [government] for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a [similar] settlement." 42 U.S.C. § 9613(f).

10

a suit under § 106 or § 107(a),[16] or after the would-be plaintiff has resolved its liability to the United States or a State in an administrative or judicially approved settlement. See Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 165-68 (2004). However, because many courts of appeal had previously held that PRPs were always required to use § 113(f) and never § 107(a) to recover costs, see, e.g., Minyard Enters., Inc. v. Se. Chem. & Solvent Co., 184 F.3d 373, 385 (4th Cir. 1999); Pneumo Abex Corp., 142 F.3d at 776, PRPs who had not yet resolved their liability with the government were left without a cause of action. See United States v. Atl. Research Corp., 551 U.S. 128, 133 (2007).

The Supreme Court addressed this situation in 2007. It stated that CERCLA provides two "complementary yet distinct" rights: a right to cost recovery under § 107(a), and a right to contribution under § 113(f). Atl. Research Corp., 551 U.S. at 138. The two provisions provide "causes of action to persons in different procedural circumstances." Id. at 139 (internal quotation marks omitted). Any party, including a PRP, may bring a § 107(a) action to recover cleanup costs. Id. at 135-36, 139. By contrast, § 113(f) gives a PRP who has paid more than its proportionate share of liability the right to contribution from other PRPs. Id. at 138-39. As such, both § 107(a) and § 113(f) are available to PRPs, depending on whether they are seeking "recovery" or "contribution."

There is no "choice of remedies" for a party whose cause of action falls squarely within one of these provisions. Id. at 140. Otherwise, to make the determination as to whether recovery or

---

[16] As already noted, § 107(a) governs when liability is created because of a person's status as a PRP for the costs of removing hazardous wastes or remediating a Superfund site. See 42 U.S.C. § 9607(a). In contrast, § 106 governs emergency abatement actions, where "the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility," the President may issue an order to "secure such relief as may be necessary to abate such danger or threat." 42 U.S.C. § 9606(a). Willful violation, failure or refusal to comply with that order makes a person liable for fines of up to $25,000 per day. 42 U.S.C. § 9606(b).

11

contribution is appropriate, the relevant inquiries suggested by the Court's decisions in <u>Cooper Industries</u> and <u>Atlantic Research</u> are: (1) whether claimant has settled its liability through administrative or judicial action, and (2) whether claimant is seeking "contribution" from defendants.[17] <u>Carolina Power & Light Co. v. 3M Co.</u>, Nos. 5:08-CV-460-FL, 5:08-CV-463-FL (E.D.N.C. Mar. 24, 2010) (unpublished). If either of these inquiries are true then that tends to show that contribution is appropriate, and not recovery. See <u>id.</u> As this court previously held, response costs incurred pursuant to an administrative settlement with the United States are recoverable only under § 113(f). See <u>id.</u>

Here, there is no question that PCS Phosphate has not "settled" any liability to the United States as that term is used in CERCLA. The trust agreement PCS Phosphate entered into was not with the EPA or any other governmental body. PCS Phosphate does not have a covenant with the EPA, as plaintiffs do, to protect it from a government lawsuit or administrative action pursuant to §§ 106 and 107(a). See 42 U.S.C. §§ 9606, 9607(a). Even though the EPA has settled with plaintiffs, the United States may still bring suit against any PRP as long as it has "obtained less than complete relief from a person who has resolved its liability to the United States." 42 U.S.C. § 9613(f)(3).

Furthermore, it is similarly clear that PCS Phosphate is not seeking contribution from third-party defendants because PCS Phosphate's proportionate share of liability has not been determined. See <u>Bernstein v. Bankert</u>, 702 F.3d 964, 981-983 (7th Cir. 2012) (recognizing that "the statutory

---

[17] Contribution is the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." <u>Atl. Research</u>, 551 U.S. at 138 (quoting Black's Law Dictionary 353 (8th ed.2004)). "A PRP's right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties." <u>Id.</u> at 139.

trigger for a § [113(f)] contribution claim is . . . the resolution of liability through settlement," and holding, in part, that "[t]rustees [that] have been subjected to no civil action [from the United States] under [§ 106 or § 107(a)]" could not seek contribution under § 113(f)). PCS Phosphate has only paid cleanup costs, through the utility of a trust fund, which it now seeks to recover. The purpose of the Supreme Court's holding in Atlantic Research was to alleviate concerns that responsible parties performing voluntary cleanups, without first being sued by the government under § 106 or § 107(a), would be penalized. Atl. Research Corp., 551 U.S. at 136-39. Therefore, PCS Phosphate properly brought its claims under § 107(a), and they will not be dismissed on the grounds that § 113(f) bars recovery.

2. Motions to Dismiss Pursuant to Rule 14

PCS Phosphate was granted leave by this court to file third-party complaints pursuant to Fed. R. Civ. P. 14, by order on November 14, 2011. At that time, third-party defendants were not subject to suit, and only the defendants named in plaintiffs' complaints were able to respond. Nonetheless, the court considered the impleader request, evaluating the timeliness of the request, possibility of prejudice to the parties, complication of issues, the possibility of delay, and the judicial efficiencies in joining PCS Phosphate's claims to an already complex action. Third-party defendants now argue (or argue in the alternative) that PCS Phosphate filed third-party complaints improperly under Rule 14(a), governing when a defendant may bring in a third party to a lawsuit. Third-party defendants assert that PCS Phosphate's lawsuit is not derivative of plaintiffs' lawsuits where PCS Phosphate seeks recovery under a separate section of CERCLA. PCS Phosphate argues that Rule 14 provides the proper mechanism for filing in this case.

Rule 14 states that "[a] defending party may, as third-party plaintiff, serve a summons and

13

Case 5:08-cv-00460-FL Document 1189 Filed 03/27/13 Page 13 of 20

complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The court must evaluate whether the third party's liability is in some way dependent on the outcome of the main claim. See 6 Charles Alan Wright et al., Federal Practice and Procedure § 1446 (3d ed. 2012); Scott v. PPG Indus., Inc., No. 89-2362, 1990 WL 200655, at *3 (4th Cir. Dec. 13, 1990) (unpublished). Here, the extent to which the original defendants, including PCS Phosphate, are liable to plaintiffs for the costs of cleanup, will have a direct impact on the extent of the liability of third-party defendants, who are also alleged PRPs. The fact that PCS Phosphate seeks relief under a different section CERCLA does not bar its claim under Rule 14. See Wright et al., supra, § 1446 ("The third-party claim need not be based on the same theory as the main claim."). In the context of CERCLA claims, courts contemplate that defendants "can protect themselves through the impleader provision of Rule 14," by impleading other PRPs using §§ 107(a) and 113(f). See L.A. Unified Sch. Dist. v. BP Am., No. 10-1181, 2010 WL 1854070, at *8 n.3 (C.D. Cal. May 6, 2010) (unpublished) (citing United States v. Marisol, Inc., 725 F.Supp. 833, 843 (M.D. Pa. 1989)). Therefore, third-party defendants' motions to dismiss on Rule 14 grounds will be denied as well.

3. Individual Supplemental Motions to Dismiss for Failure to State a Claim

Riley Power, Truland, and MEC filed motions to dismiss pursuant to Rule 12(b)(6) that argued individualized reasons for dismissal, in addition to the omnibus grounds discussed above. PCS Phosphate claims third-party defendants are liable under theories of past owner liability and/or arranger liability pursuant to §§ 107(a)(2) and (a)(3), respectively. 42 U.S.C. § 9607(a). Riley Power, Truland, and MEC argue that the complaint is insufficient to allege liability on either of these grounds.

To establish a prima facie case of past owner liability under CERCLA, the pleadings must

14

allege: (1) "that the defendant 'owned'... a 'facility' from which there was a 'release' or 'threatened release' of a hazardous substance," Westfarm Assoc. Ltd. P'ship v. Wash. Suburban Sanitary Comm'n, 66 F.3d 669, 677 (4th Cir. 1995); (2) that the defendant owned the facility "at the time of disposal," 42 U.S.C. § 9607(a)(2); and (3) "that the plaintiff[s] incurred necessary cleanup costs 'consistent with the national contingency plan,'" Westfarm, 66 F.3d at 677.[18] Any owner of a facility is liable "whether or not such owner . . . was the cause of the disposal or, indeed, even had knowledge of it," Crofton Ventures Ltd. P'ship. v. G&H P'ship, 258 F.3d 292, 297 (4th Cir. 2001), and whether or not the owner had an "active role" in managing or overseeing the facility, see Nurad, Inc. v. William E. Hooper & Sons Co., 966 F.2d 837, 844 (4th Cir. 1992).

In order to establish a prima facie case of arranger liability under CERCLA, the pleadings must allege: (1) that the defendants owned or possessed hazardous substances; (2) that they, by contract, agreement or otherwise, arranged for disposal or treatment, or arranged for transport for disposal or treatment of those substances at a facility; (3) that there was a release or threatened release of a hazardous substance at the site; and (4) that the release or threatened release caused the incurrence of response costs. United States v. Ward, 618 F. Supp. 884, 893-94 (E.D.N.C. 1985).

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

---

[18]Facility is defined to include not only buildings and natural physical features, but also "equipment," "storage containers," or any "site or area where a hazardous substance has been deposited, stored, disposed of, or place, or otherwise come to be located," thus including the transformers themselves. 42 U.S.C. § 9601(9). "Release" is defined as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." Id. § 9601(22). "Disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such . . . waste or any constituent thereof may enter the environment." Id. §§ 6903(3), 9601(29). It is undisputed that PCBs are a "hazardous substance" as defined by 42 U.S.C. § 9601(14) and that defendants are "persons" as defined by 42 U.S.C. § 9601(21).

15

Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). However, each of the three third-party defendants who make individualized motions ask the court to resolve contested factual assertions and weigh the merits of PCS Phosphate's claims of liability under CERCLA. Third-party defendants reference and discuss the Ward records that pertain to third-party defendants' transactions with Ward ("nexus documents"). These nexus documents were not attached to or incorporated in the third-party complaints.[19]

Riley Power argues that the additional third-party complaint is inaccurate when compared to its nexus documents. Riley Power Br. 20. Riley Power points out that the complaint alleges transformers sent for consignment contained PCBs, and were subsequently scrapped. Id. However, the nexus documents indicated they were non-PCB transformers, and that they were scrapped in November, 2005, after plaintiffs entered into the AOC. Id. MEC adopts in part the arguments of Riley Power, noting that it too was alleged to have sent to Ward a non-PCB transformer according to Ward records. MEC Br. 2.

Truland similarly argues that the third-party complaint is contradicted by nexus documents. Truland Br. 3, 11-12, 16, 18, Ex. A. Truland claims that it is not possible for the single transformer it allegedly sent in for repair to have leaked PCBs that contaminated the Ward site when Ward records indicate no oil leaks from the rusted tranformer. Id. at 3. Furthermore, Truland points to the absence of indication in the nexus documents as to whether any oil or oil-coated parts were removed

---

[19] Note that Truland characterizes the Ward documents as being incorporated into the third-party complaint by PCS Phosphate. However, the third-party complaints only indicate that nexus documents will be provided to defendants. They do not incorporate those unattached documents by reference. See supra Statement of the Facts Part B. Furthermore, the court's consideration of documents attached to a complaint or motion to dismiss is discretionary, and only allowed if "they are integral to the complaint and authentic." Philips. v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). No such showing by PCS Phosphate has been made or argued here, therefore the court may not properly consider these documents on motions to dismiss.

from Truland's transformer during its repair. Id. at 12, 16. Truland's transformer, according to nexus documents, contained 10.1 ppm of PCBs in its oil and is thus a non-PCB transformer. Id. at 18.

Therefore, all three third-party defendants who filed individual supplemental motions to dismiss challenge the ability of PCS Phosphate to make a case against them for arranger and/or past owner liability based on nexus documents. The nexus documents, however, may not be properly relied upon when making a determination pursuant to Rule 12. See supra note 19. Thus, third-party defendant's individual supplemental motions will be denied. The court will, however give third-party defendants the opportunity to file additional briefs in support of summary judgment under Rule 56(f), and will allow PCS Phosphate time to respond, in accordance with Rule 56 and the Local Rules.[20] See Fed. R. Civ. P. 12(b) ("If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside of the pleading are presented to and not excluded by the trial court, the motion shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

4.     Individual Motion to Dismiss for Lack of Personal Jurisdiction

Truland filed a second individual supplemental motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). Where the court addresses a Rule 12(b)(2) motion without benefit of an evidentiary hearing, but rather relies only on the motion papers, supporting memoranda, affidavits, and pleadings, claimant's burden is simply to make a *prima facie* showing of jurisdiction.

---

[20] The court refers these parties to its orders dated January 31, 2013, and February 18, 2013, in addition to the legal standards recited supra Discussion Part B.3., for guidance on what facts are material to the determination of arranger or past owner liability.

17

In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997); Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 62 (4th Cir. 1993).[21] The court construes the allegations in these filings in the light most favorable to PCS Phosphate, assumes credibility, and draws the most favorable inferences for the existence of jurisdiction. In re Celotex Corp., 124 F.3d at 628.

The two-part test in establishing that the court has personal jurisdiction over a nonresident defendant is: (1) jurisdiction must be authorized by the state long-arm statute and (2) the exercise of jurisdiction in the particular case is consistent with due process. Christian Science Bd. of Directors v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Because North Carolina's long-arm statute is construed to extend jurisdiction to the full extent permitted by the Due Process Clause, the court in this case need only inquire into whether "the defendant has such 'minimal contacts' with the forum state that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

The court weighs three components in determining whether the exercise of specific personal jurisdiction[22] is appropriate: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the . . . claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)). The first

---

[21] Ultimately, the burden of proof on plaintiffs is one of "preponderance of the evidence." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). Even where the claimants are able to make the threshold *prima facie* showing of jurisdiction, they eventually must demonstrate jurisdiction by a preponderance of the evidence standard, either at trial or at a pretrial evidentiary hearing. Id. at 294 n.5.

[22] In response to Truland's motion to dismiss for lack of personal jurisdiction, PCS Phosphate does not argue that the court has general jurisdiction, but only specific jurisdiction. Therefore, the court here only considers specific jurisdiction as forming a basis for personal jurisdiction over Truland.

18

component sets forth the basic minimum contacts requirement, and the second requires that such contacts form the basis for the suit. See id. at 277 ("The minimum contacts test requires the plaintiff to show that the defendant purposefully directed his activities at the residents of the forum and that the . . . cause of action arises out of those activities.") (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). The third component "permits a court to consider additional factors to ensure the appropriateness of the forum" once the court has concluded that defendant has sufficient contacts with the State. Id. at 279.

PCS Phosphate alleges that Truland sent at least one transformer containing PCBs to the Ward Site (located in North Carolina) for repair in 1982. The conduct alleged is sufficient to subject Truland to specific personal jurisdiction in this forum. "Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that . . . contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003); see also Chung v. NANA Dev. Corp., 783 F.2d 1124, 1129 (4th Cir. 1986) ("[A] single shipment of goods into the forum state may sometimes establish a jurisdictional basis."). Fair play and substantial justice are not offended here where there is at least one transaction with a North Carolina company, suggesting that third-party defendant Truland purposely directed activities at North Carolina. See Consulting Eng'rs, 561 F.3d at 278 (noting that factors to be considered include "the nature, quality and extent of the parties' communications about the business being transacted"); cf. Akeva, LLC v. Mizuno Corp., 199 F. Supp. 2d 336, 339 (M.D.N.C. 2002) ("[A] defendant has minimum contacts with the forum when it purposefully ships a product into the forum state through an established distribution channel.").

This is not a case where claimant PCS Phosphate has made no allegation that "the moving

19

[d]efendant[] knew that [its transformers and their] waste oil w[ere] being transported to North Carolina." Crown Cork & Seal Co., Inc. v. Dockery, 886 F. Supp. 1253, 1259 (M.D.N.C. 1995). Instead, the reasonable inferences drawn from the totality of the pleadings and records submitted for the court's review suggest defendant's conduct was directed at North Carolina "in more than a random, fortuitous, or attenuated way," Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004), and that fair play and substantial justice will not offended by the court's exercise of jurisdiction. Further factual investigation may show that Truland did not send any transformers to Ward, and that only one transformer "made its way to North Carolina" without direction from Truland, as it claims. If it does, then third-party defendant Truland is not prejudiced to put the claimants to their ultimate burden of showing jurisdiction by preponderance of the evidence. However, at this point in time dismissal is inappropriate. Because PCS Phosphate has made its *prima facie* showing, the motion to dismiss is denied without prejudice.

## CONCLUSION

Third-party defendants' motions to dismiss (DE ## 946, 953, 955, 957, 963, 1121, 1123, 1125, 1127, 1129, and 1131) are DENIED.[23] The court will separately enter an order regarding planning and scheduling with respect to claims by PCS Phosphate against third-party defendants.

SO ORDERED, this the 27 day of March, 2013.

LOUISE W. FLANAGAN
United States District Judge

---

[23] Third-party defendant Truland's motion to dismiss for lack of personal jurisdiction is denied without prejudice to renewal at the close of discovery or before trial.

20